# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
### ATLANTA DIVISION

| | |
|---|---|
| STEVEN KEARNY, | Civil Action No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| FRONT YARD RESIDENTIAL CORPORATION, ROCHELLE R. DOBBS, LELAND ABRAMS, GEORGE G. ELLISON, MICHAEL A. ERUZIONE, LESLIE B. FOX, WADE J. HENDERSON, LAZAR NIKOLIC, and GEORGE WHITFIELD MCDOWELL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Steven Kearney ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Front Yard Residential Corporation ("Front Yard" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Front Yard will be acquired by an investor group led by Pretium Partners, LLC ("Pretium") and including funds managed by Ares Management Corporation ("Ares," and together with Pretium, the "Investor Group") through Pretium's affiliates Pretium Midway Holdco, LP ("Parent") and Midway AcquisitionCo REIT ("Merger Sub") (the "Proposed Transaction").

2.      On October 19, 2020, Front Yard issued a press release announcing it had entered into an Agreement and Plan of Merger dated October 19, 2020 (and as amended on November 20, 2020, the "Merger Agreement") to sell Front Yard to the Investor Group.  Under the terms of the Merger Agreement, each Front Yard stockholder will receive $16.25 in cash for each share of Front Yard common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.4 billion.

3.      On December 8, 2020, Front Yard filed a filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Front Yard stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning,

among other things: (i) Front Yard management's financial projections, and the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank Securities Inc. ("Deutsche Bank"); and (ii) Deutsche Bank's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Front Yard's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so

- 3 -

as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Front Yard.

9.      Defendant Front Yard is a Maryland corporation, with its principal executive offices located at c/o Altisource Asset Management Corporation, 5100 Tamarind Reef, Christiansted, United States Virgin Islands 00820.  Front Yard is an industry leader in providing quality, affordable rental homes to America's families in a variety of suburban communities that have easy accessibility to metropolitan areas.  Front Yard's common stock trades on the New York Stock Exchange under the ticker symbol "RESI."

10.     Defendant Rochelle R. Dobbs ("Dobbs") has been Chair of the Board since May 2018 and a director of the Company since December 2016.

11.     Defendant Leland Abrams ("Abrams") has been a director of the Company since June 2019.

12.     Defendant George G. Ellison ("Ellison") has been the Company's Chief Executive Officer ("CEO") since June 2015 and a director of the Company since August 2015.

13.     Defendant Michael A. Eruzione ("Eruzione") has been a director of the Company since December 2012.

14.     Defendant Leslie B. Fox ("Fox") has been a director of the Company since 2019.

15.     Defendant Wade J. Henderson ("Henderson") has been a director of the Company since April 2017.

16.     Defendant Lazar Nikolic ("Nikolic") has been a director of the Company since June 2019.

17.     Defendant George Whitfield McDowell ("McDowell") has been a director of the Company since March 2018.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.    Pretium is a specialized alternative investment management firm focused on residential real estate, mortgage finance, and corporate credit.  Pretium was founded in 2012 to capitalize on secular investment and lending opportunities arising as a result of structural changes, disruptions, and inefficiencies within the economy, the residential housing sector, and mortgage finance markets.  Pretium has built an integrated analytical and operational ecosystem within the U.S. residential housing, mortgage, and corporate credit markets.  Pretium's platform has more than $16 billion of assets under management as of October 1, 2020 and employs approximately 1,500 employees across 26 offices.

20.    Ares is a leading global alternative investment manager operating integrated businesses across Credit, Private Equity and Real Estate.  Ares' investment groups collaborate to deliver investment solutions and consistent investment returns for fund investors throughout market cycles.  Ares' global platform had approximately $165 billion of assets under management as of June 30, 2020 with approximately 1,400 employees operating across North America, Europe and Asia Pacific, pro forma for the acquisition of SSG Capital Holdings Limited which closed on July 1, 2020.

21.    Parent is a Delaware limited partnership and an affiliate of Pretium.

22.    Merger Sub is a Maryland real estate investment trust and a direct wholly-owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.    Front Yard is a Maryland real estate investment trust ("REIT") and an industry leader in providing quality, affordable rental homes to America's families in a variety of suburban communities that have easy accessibility to metropolitan areas.  The Company operates in a single segment focused on the acquisition and ownership of residential rental properties.

24.    On August 8, 2018, the Company acquired a property management firm and began the process of internalizing its property management function.  During the first quarter of 2019, Front Yard completed the transfer of its externally managed homes to its internal property management platform.  The internalization of property management provides the Company with an efficient, scalable property management platform that is designed to provide tenants with excellent service.  As Front Yard continues to grow, this platform will allow the Company to benefit from economies of scale that will enhance long-term stockholder value.  Prior to this internalization, the Company relied exclusively on two external property management vendors to provide, among other things, leasing and lease management, operations,

maintenance, repair and property management services in respect of certain single family residence properties.

25.    On November 4, 2020, the Company announced its third quarter 2020 financial results.  Rental revenues increased to $56.9 million for the third quarter of 2020, up 3.3% over the second quarter of 2020 and up 12.2% year on year.  Core Funds from Operations ("FFO") was $0.19 per diluted share, up $0.01 from the second quarter of 2020 and up $0.19 year on year. Stabilized Rental leased percentage was 98.8%, up from 98.3% as of June 30, 2020 and 94.3% as of September 30, 2019.  Commenting on the financial results, defendant Ellison stated, "Our operating metrics remained very strong during the third quarter, which due to seasonality is typically a more challenging period.  Improving occupancy levels and blended rent growth are reinforcing our operating results."

**The Proposed Transaction**

26.    On October 19, 2020, Front Yard issued a press release announcing the Proposed Transaction, which states, in relevant part:

> **CHRISTIANSTED, U.S. Virgin Islands, Oct. 19, 2020** (GLOBE NEWSWIRE) -- Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), an industry leading provider of high-quality and affordable rental homes, announced today that it has entered into a definitive merger agreement whereby a partnership led by Pretium and including funds managed by the Real Estate Equity and Alternative Credit strategies of Ares Management Corporation (NYSE: ARES) (together, the "Partnership"), will acquire Front Yard in a

transaction valued at approximately $2.4 billion, including debt to be assumed or refinanced.

Under the terms of the agreement, Front Yard stockholders will receive $13.50 in cash per share.  The per share purchase price represents a premium of approximately 35.5% over Front Yard's closing share price on October 16, 2020, the last trading day prior to today's announcement, and 45.4% over Front Yard's one-month volume-weighted average share price.

"We are excited to have reached an agreement with Pretium and Ares Management for the sale of our company, which we believe represents an outstanding, value-maximizing outcome for Front Yard stockholders," said George Ellison, Front Yard's Chief Executive Officer.  "Pretium has built an impressive portfolio of single-family rental homes and has developed an industry-leading platform that includes more than 40,000 homes under management.  I am confident that the combination of our complementary portfolios, with increased size and scale, operating leverage and efficiencies, will deliver significant benefits to our platform and residents."

"The Front Yard Board of Directors has always been committed to maximizing value for our stockholders, and we believe this merger accomplishes that objective," said Rochelle R. Dobbs, Front Yard's Chairwoman of the Board of Directors.  "This transaction is the result of an extensive and thorough review of strategic alternatives by our Board.  Earlier this year we announced a transaction to internalize our asset management function, a change that we believed would best position us to enhance stockholder value going forward.  We now are pleased to successfully conclude our process with a transaction that delivers immediate and significant value to our stockholders."

"This transaction is an important development in the evolution of the single-family rental sector as the asset class continues to perform strongly and attract increasing amounts of institutional investment," said Don Mullen, Pretium's Chairman and CEO.  "Pretium is proud of the role we have played in driving the growth and maturation of the industry, and we look forward to building on that track record with this acquisition.  We welcome the Front Yard team to the Pretium family

and we, along with our partners at Ares Management, will build on the significant progress they have achieved as we further invest in this business and apply our scale and strategic and operational expertise to deliver benefits for renters, communities, and investors."

**Approvals and Timing**

The transaction is expected to close in the first quarter of 2021, subject to the approval of the holders of a majority of Front Yard's outstanding shares and the satisfaction of customary closing conditions.

The Front Yard Board of Directors has unanimously approved the merger agreement and intends to recommend that Front Yard stockholders vote in favor of it at a Special Meeting of Stockholders, to be scheduled as soon as practicable.   Stockholders representing approximately 14.8% of Front Yard's voting stock have agreed to vote in favor of the transaction.

27.    On November 23, 2020, Front Yard issued a press release announcing

the amended Merger Agreement which states, in relevant part:

CHRISTIANSTED, U.S. Virgin Islands, Nov. 23, 2020 (GLOBE NEWSWIRE) -- Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), an industry leading provider of high-quality and affordable rental homes, announced today that it has amended its definitive merger agreement with a partnership led by Pretium and including funds managed by the Real Estate Equity and Alternative Credit strategies of Ares Management Corporation (NYSE: ARES) (together, the "Pretium Partnership") to increase the consideration payable to holders of outstanding shares of Front Yard stock to $16.25 per share in cash from $13.50 per share in cash, which values the Company at approximately $2.5 billion, including debt to be assumed or refinanced. The revised transaction price represents a 63% premium over Front Yard's closing share price on October 16, 2020, the last trading day prior to the date on which the Company entered into the merger agreement.

Front Yard and the Pretium Partnership negotiated the amendment following the receipt by Front Yard of an unsolicited binding proposal (the "Proposal") from an unaffiliated third party to acquire all outstanding shares of Front Yard common stock. The board of directors (the "Board") of Front Yard, in consultation with its legal and financial advisors, carefully considered the terms of the Proposal and the amended Pretium Partnership transaction and determined that entering into the amendment to the Pretium Partnership merger agreement was in the best interests of Front Yard and its stockholders. Front Yard's Board approved the amended merger agreement and recommends that Front Yard's stockholders vote in favor of the amended Pretium Partnership merger agreement.

## Insiders' Interests in the Proposed Transaction

28.     Front Yard insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Front Yard.

29.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with the Investor Group.  Pursuant to the Merger Agreement, certain outstanding options and restricted stock awards ("RSU") will convert into the right to receive cash payments.  For example, the Company's non-employee directors will receive an aggregate of approximately $1,041,154 in connection with their unvested Company Director-Granted RSUs.  In addition, the following table sets forth the cash payments the Company's named executive officers stand to

receive in connection with their outstanding equity awards:

| Name | Unvested Company Options | Vested Company Options | Unvested Company Service-Based RSUs (2)(a) | Unvested Company Market-Based RSUs (2)(b) | Total |
|---|---|---|---|---|---|
| George G. Ellison | $ 522,321 | $ 1,863,000 | $ 2,616,417 | $ 4,565,469 | $ 9,567,207 |
| Robin N. Lowe | $ 107,537 | $ 407,270 | $ 812,238 | $ 1,005,727 | $ 2,332,772 |
| Stephen H. Gray | $ 107,537 | $ 407,270 | $ 812,238 | $ 1,005,727 | $ 2,332,772 |
| Michael G. Lubin | $ 107,537 | $ 407,270 | $ 812,238 | $ 1,005,727 | $ 2,332,772 |
| Rene Dittrich | $ — | $ — | $ 603,332 | $ — | $ 603,332 |

30.     Further, the Proxy Statement sets forth that certain Front Yard executive officers stand to receive "make-whole" bonuses upon consummation of the Proposed Transaction.  The Proxy Statement sets forth that "[t]he Company may in its sole discretion pay directly or through reimbursement of the Manager amounts in respect of 2019 bonuses that are currently unpaid by the Manager, in an aggregate amount not to exceed $2,290,000, some or all of which may be paid to the Company's executive officers."  Proxy Statement at 53.

31.     Moreover, if they are terminated in connection with the Proposed Transaction, Front Yard's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash (1) | Equity (2) | Perquisites / Benefits (3) | Total |
|---|---|---|---|---|
| George G. Ellison - Chief Executive Officer | $ 3,686,068 | $ 9,567,207 | $ 44,176 | $ 13,297,451 |
| Robin N. Lowe - Chief Financial Officer | $ 1,548,160 | $ 2,332,772 | $ 44,423 | $ 3,925,355 |
| Stephen H. Gray - Chief Administrative Officer and Senior Counsel | $ 1,687,734 | $ 2,332,772 | $ 64,682 | $ 4,085,188 |
| Michael G. Lubin - General Counsel and Corporate Secretary | $ 1,360,660 | $ 2,332,772 | $ 96,662 | $ 3,790,094 |
| Rene Dittrich - Chief Accounting Officer | $ 988,999 | $ 603,332 | $ 41,255 | $ 1,633,586 |

## The Proxy Statement Contains Material Misstatements or Omissions

32.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Front Yard's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

33.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Front Yard management's financial projections, and the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank; and (ii) Deutsche Bank's potential conflicts of interest.

**Material Omissions Concerning Front Yard Management's Financial Projections and Deutsche Bank's Financial Analyses**

34.     The Proxy Statement omits material information regarding Company management's financial projections.

35.     For example, the Proxy Statement fails to disclose (i) each of the line items underlying the free cash flows calculated by Deutsche Bank in its *Discounted Cash Flow Analysis* ("DCF"), including: (a) Adjusted EBITDA; (b) capital expenditures; and (c) capitalized leasing commission; and (ii) all line items used to calculate the Company's Rental NOI, Core FFO, AFFO, and Adjusted EBITDA.

36.     Additionally, the Proxy Statement describes Deutsche Bank's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Deutsche Bank's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Front Yard's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Deutsche Bank's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37.     With respect to Deutsche Bank's *DCF*, the Proxy Statement fails to disclose: (i) the line items underlying the free cash flows utilized in the analysis; (ii) the metric Deutsche Bank applied perpetuity growth rates to in order to calculate a range of terminal values for Front Yard, and quantification thereof; (iii) quantification of the Company's terminal values; (iv) quantification of the inputs and assumptions underlying the range of discount rates of 7.75% to 8.25%; and (v) the Company's after-tax cost of debt and net debt.

38.     With respect to Deutsche Bank's *Present Value Analysis*, the Proxy Statement fails to disclose: (i) Deutsche Bank's basis for selecting Core FFO multiples of 10x to 16x; and (ii) quantification of the individual inputs and assumptions underlying the discount rate of 12.5%.

39.     The omission of this information renders the statements in the "Certain Financial Projections Utilized in Connection with the Merger" and "Opinion of Deutsche Bank Securities Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Deutsche Bank's Potential Conflicts of Interest***

40.     The Proxy Statement fails to disclose the potential conflicts of interest faced by the Company's financial advisor, Deutsche Bank.

41.     The Proxy Statement sets forth that:

> One or more members of the DB Group have, from time to time, provided, and are currently providing, commercial banking (including extension of credit) and other financial services to the Equity Investors, and their affiliates for which they have received, and in the future may receive, compensation. In addition, the DB Group may also provide investment and commercial banking services to the Equity Investors, Front Yard or their respective affiliates in the future, for which Deutsche Bank would expect the DB Group to receive compensation. In the past two years, Deutsche Bank has provided investment banking services to Front Yard and has provided investment banking services to the Equity Investors or their respective affiliates. In the ordinary course of business, members of the DB Group may actively trade in the securities and other instruments and obligations of the Equity Investors, Front Yard and their respective affiliates for their own accounts and for the accounts of their customers. Accordingly, the DB Group may at any time hold a long or short position in such securities, instruments and obligations.

*Id*. at 50-51.  The Proxy Statement, however, fails to disclose the timing and specific nature of the services Deutsche Bank is proving or has provided to the Investor

Group and the amount of compensation received or to be received by Deutsche Bank and its affiliates for providing such services.

42.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43.    The omission of this material information renders the statements in the "Opinion of Deutsche Bank Securities Inc." section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Front Yard stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

45.    Plaintiff repeats all previous allegations as if set forth in full.

46.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Front Yard management's financial projections, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank, and Deutsche Bank's potential conflicts of interest   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of Front Yard within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Front Yard, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be

corrected.

54.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

55.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants

are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Front Yard's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Front Yard, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Front Yard stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and

proper.


## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  December 24, 2020                    **WEISSLAW LLP**


                                             /s/ *Michael A. Rogovin*
                                             Michael A. Rogovin
                                             Georgia Bar No. 780075
                                             476 Hardendorf Ave. NE
                                             Atlanta, GA 30307
                                             Tel.: (404) 692-7910
                                             Fax: (212) 682-3010
                                             mrogovin@weisslawllp.com

                                             *Attorneys for Plaintiff*